# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

**Appeal from**
*Burton v. Hagh Law PLLC, et al.*
Case No. 3:20-ap-90002

**Manookian PLLC and Brian Manookian, Appellants**

v.

**Trustee Jeanne Ann Burton, Appellee**

Case No. 3:22-cv-00474

Judge Aleta A. Trauger

**ORAL ARGUMENT REQUESTED**

---

**APPELLANTS' OPENING BRIEF**

---

# **TABLE OF CONTENTS**

I.   JURISDICTIONAL STATEMENT............................................................3

II.  STATEMENT OF THE ISSUES..............................................................3

III. STANDARD OF REVIEW .....................................................................4

IV.  STATEMENT OF THE CASE.................................................................4

V.   ARGUMENT............................................................................................9

    A. Interlocutory Appeal is Warranted Where A Lower Court Fails to Disclose Ex Parte Communications or Give the Parties Key Information Related to Recusal ..................................................................9

    B. The Bankruptcy Court Should Be Disqualified or, at Minimum, Required to Disclose its Ex Parte Communications and Rule on the Disqualification Motion ........................................................................12

VI.  CONCLUSION .......................................................................................18

I.  **JURISDICTIONAL STATEMENT**

Appellants Manookian PLLC and Brian Manookian ("Appellants") appeal from the Bankruptcy Court's June 1, 2022 Order Quashing Notice of Deposition, Case No. 3:20-ap-90002 (Bankr. M.D. Tenn.) (Doc. 184)) (App'x at 002).[1] The Bankruptcy Court had jurisdiction over the matter under 11 U.S.C. §§ 1334 & 157. The Decision is a final order appealable under 28 U.S.C. § 158 (a)(1), or, in the alternative, Appellants request that this Court consider their timely notice of appeal to be a motion for leave to file interlocutory appeal. Fed. R. Bankr.P. 8003(c). *In re Eggleston Works Loudspeaker Co.*, 253 B.R. 519, 521 (B.A.P. 6th Cir. 2000). The Court has jurisdiction to hear the appeal under either 28 U.S.C. § 158 (a)(1) or § (a)(3).

Appellant timely filed his Notice of Appeal on June 14, 2022, within 14 days of the entry of the Decision as prescribed by Fed. R. Bankr. P. 8002.

II. **STATEMENT OF THE ISSUES**

Did the Bankruptcy Court err in failing to recuse itself, scheduling an evidentiary hearing, and *sua sponte* quashing a deposition notice after engaging in material *ex parte* communications about Appellants, details of which it has not disclosed to the parties?

---

[1] For the Court's convenience, Appellants have Bates-Numbered the Appendix and cite directly to the Bates Number as opposed to individual exhibits.

### III. STANDARD OF REVIEW

"When reviewing a bankruptcy court's decision in a 'core proceeding,' a district court functions as an appellate court, and applies the standard of review generally applied in the federal courts of appeals." *In re Matter of Webb*, 954 F.2d 1102, 1103-04 (5th Cir.1992) (footnotes omitted). Thus, under 28 U.S.C. § 158(a), in reviewing a bankruptcy court's decision, a district court applies a clearly erroneous standard of review to findings of fact, and a de novo standard of review to conclusions of law. *In re Baker & Getty Financial Services, Inc.*, 106 F.3d 1255, 1259 (6th Cir.1997). "On an appeal the district court ... may affirm, modify, or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings." *In re Buchanan*, No. 2:05-0114, 2006 WL 2090213, at *1 (M.D. Tenn. July 25, 2006) (citing Fed. R. Bankr. P. 8013).

### IV. STATEMENT OF THE CASE

#### A. The Bankruptcy Court Engages in Ex Parte Communications About a Litigant

During a March 17, 2022 hearing, the Bankruptcy Court ordered, over the objection of Appellants and Co-Defendant Hagh Law, that certain depositions involving Appellant Manookian be held in the courthouse rather than counsel's office. In order to justify its rationale for this Order, the Bankruptcy Court addressed what it termed the "100 pound gorilla in the room on that issue," namely, Appellant Manookian's "past behavior before the tribunals." The Bankruptcy Court said "I've

4
Case 3:22-cv-00474   Document 5   Filed 08/04/22   Page 4 of 19 PageID #: 41

had at least two lawyers call the Court and say they don't feel comfortable if your client is going to appear, and, you know, the Court takes those concerns very seriously and makes no conclusion on whether they are valid, they are perceptions which drive behaviors of other parties." Transcript of Pretrial Conference, Page 84:11-23 (App'x at 094).

In addition to admitting having participated in multiple ex parte conversations in this case, the Court additionally made reference to "[Brian Manookian's] past behavior before tribunals" when it ordered that depositions be conducted at the Courthouse over "security concerns" about Mr. Manookian. But the Court did not disclose what it believed that "past behavior" to include, or where it acquired such information.

No evidence or past proceedings in the case suggested that Mr. Manookian (who was not present at the hearing) posed a security concern or had conducted himself inappropriately. And to be clear, Mr. Manookian has conducted or attended hundreds of depositions over the course of his career, including as a witness on multiple occasions. No court has ever found that he acted even remotely inappropriately, much less in a physically threatening manner, during a deposition.

### B. The Bankruptcy Court Declines to Disclose the Substance of its Communications or Promptly Rule on a Motion to Disqualify

After obtaining the transcript of the hearing, Appellants promptly filed a motion asking the Court to disqualify itself and detail the dates, substance of, and

5

Case 3:22-cv-00474   Document 5   Filed 08/04/22   Page 5 of 19 PageID #: 42

parties to each of the *ex parte* communications, pursuant to 28 U.S.C. § 455(a) & (b)(1) and Canon Three of the Code of Conduct for Federal Judges (prohibiting judges from engaging in *ex parte* communications about a pending matter and, in the event an unauthorized *ex parte* communication is received, requiring prompt disclosure of the subject matter and an opportunity for the parties to respond). Dkt. No. 161 (App'x at 106).

Rather than ruling on the motion, the Court set an evidentiary hearing, on its own initiative, calling for "[p]resentation of evidence" on the motion, but not until more than six weeks later on June 29, 2022. Dkt. No. 165 (App'x at 117). The Court did not explain how or why it expected to receive testimonial evidence on the disqualification motion, nor did it explain how Appellants could obtain evidence regarding the Court's *ex parte* communications—known exclusively to the Court and not Appellants.

It did not—and to this day, has not—disclosed any additional information about the *ex parte* communications that formed the basis of its March 17, 2022 ruling. Nor has it issued an order adjudicating the motion to disqualify.

> **C. The Bankruptcy Court Prevents Appellants from Obtaining Discovery in Advance of the Evidentiary Hearing and Again Declines to Recuse or Disclose the Substance of its *Ex Parte* Communications**

Facing an evidentiary burden and lacking information about the newly disclosed communications, Appellant Manookian PLLC reluctantly availed itself of

the one tool a litigant can use to obtain evidence for presentation to a Court: a deposition. It noticed a deposition of Judge Charles M. Walker to take place two weeks before the evidentiary hearing, identifying two relevant topics of inquiry: (1) Judge Walker and his staff's communications about this matter with third parties outside of court proceedings and (2) Judge Walker and his staff's investigation into this matter, the parties, or witnesses outside of the Court record. Dkt. No. 177 (App'x at 118).

The following day, Judge Walker issued an order *sua sponte* quashing the Notice of Deposition and declaring it unenforceable. Dkt. No. 178 (App'x at 002). Rather than take the opportunity to disclose the substance or any details of his *ex parte* communications, Judge Walker used the order to attack Appellants, accuse them of "tainting the proceedings," and assign various improper motives to their attempt simply to discover information that Judge Walker himself was required to disclose as a result of extrajudicial communications that did not involve Appellants. In the Order, the Court wrote:

- "As to the first consideration, the Court finds that the Notice serves no purpose other than to waste the resources of the United States for private purposes… and is a misuse of the resources available in order to avail oneself of the justice provided by the bankruptcy system." Dkt. No. 178 (App'x at 007).

- "The request is inappropriate as the request for testimony from the sitting judge serves no purpose other than to taint the proceedings before the Court." Dkt. No. 178 (App'x at 007).

- The request for testimony of the judge sitting on the case is sought in order to contaminate the exercise of judicial and quasi-judicial responsibilities by federal judicial personnel." Dkt. No. 178 (App'x at 008).

- For the twelfth and thirteenth factors, deposing the judge on a case is a manipulation of the judicial system in an effort to taint the proceedings." Dkt. No. 178 (App'x at 008).

Having refused to promptly or voluntarily disclose the substance of his *ex parte* communications, and having prohibited Appellants from discovering the same via his testimony after unilaterally setting the matter for an evidentiary hearing, Judge Walker then appeared at the evidentiary hearing and declined to permit argument or introduction of evidence. Instead, Judge Walker read a statement into the record that he would refuse to rule on the motion as a result of this appeal. Dkt. No. 182 (App'x at 125).

As the case presently stands, the Bankruptcy Court is refusing to disclose the substance of its *ex parte* communications; refusing to permit Appellants to discover the substance of the *ex parte* communications; and refusing to rule on the pending Motion to Disqualify absent an evidentiary hearing for which Appellants cannot obtain evidence.

V.  ARGUMENT

   A. **<u>Interlocutory Appeal is Warranted Where A Lower Court Fails to Disclose Ex Parte Communications or Give the Parties Key Information Related to Recusal</u>**

Interlocutory appeal is discretionary but may be granted where "the order on appeal involves a controlling question of law as to which there is a substantial ground for difference of opinion; […] an immediate appeal may materially advance the ultimate termination of the litigation; and […] denying leave would result in wasted litigation and expense." *In re Eggleston Works Loudspeaker Co.*, 253 B.R. 519, 521 (B.A.P. 6th Cir. 2000).

Here, assuming arguendo that the Bankruptcy Court's order is interlocutory, leave to appeal is warranted.

***First***, the appeal involves a controlling question of law as to which there is a substantial ground for difference of opinion. Disqualification of a judge under these circumstances is governed by statute. *See* 28 U.S.C. § 455(a) & (b)(1) (requiring disqualification when the judge's "impartiality might reasonably be questioned" and when the judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding"). "The standard for determining whether a judge should be disqualified is an objective one: whether a reasonable person with knowledge of all facts would conclude that the judge's impartiality might reasonably be questioned." *In re Haas*, 292 B.R. 167, 177 (Bankr.

S.D. Ohio 2003). Judicial remarks about a litigant "*may* [support a bias or partiality challenge] if they reveal an opinion that derives from an extrajudicial source[.]" *Liteky v. United States*, 510 U.S. 540, 555 (1994) (holding that Extrajudicial Source Doctrine applies to disqualification under § 455) (emphasis in original).

The Bankruptcy Court refused to apply the objective standard or otherwise disclose its *ex parte* communications about Appellant Manookian. Instead, it scheduled an evidentiary hearing, requiring Appellants to put on evidence regarding the Court's *ex parte* communications—evidence that is exclusively in the Court's possession. Then it prevented Appellants from obtaining that evidence when they—reluctantly, and only to meet the additional evidentiary burden put on them by the Bankruptcy Court—issued a deposition Notice to the Court in order to obtain evidence before the hearing. The Court *sua sponte* quashed the Notice, preventing Appellants from obtaining evidence they should not have been required to put on in the first place.

**Second**, an immediate appeal will materially advance the ultimate termination of the litigation. This Court's guidance on the appropriate standard for recusal and correct process for considering disqualification requests relating to *ex parte* communications and extrajudicially developed bias will aid the parties and the Bankruptcy Court. If the Bankruptcy Court's Order is vacated and the case returned with instructions that it be transferred to another judge, the new judge can promptly

address remaining discovery and dispositive motions, picking up where his or her colleague left off. Requiring the parties to wait until the end of the bankruptcy case before appealing the Bankruptcy Judge's consideration of a disqualification motion would only prolong the litigation.

*Finally,* and relatedly, denying leave for interlocutory appeal would result in wasted litigation and expense. If the Court declines to consider this appeal, the Bankruptcy Court will presumably conduct an evidentiary hearing in which Appellants lack access to key evidence. Assuming the Bankruptcy Court then denied Appellants' disqualification motion, Appellants would seek review of the denial for the same reasons they now seek review of the Bankruptcy Court's handling of the disqualification motion.

Instead of allowing an already misguided process to go further off track, this Court should take the opportunity to clarify the law and process for considering recusal motions, ultimately requiring that the Bankruptcy Court either be disqualified or rule on Appellants' disqualification motion without requiring them to obtain and present evidence of extrajudicial communications that is exclusively in the Bankruptcy Court's possession. The issues surrounding the Bankruptcy Court's *ex parte* communications and extrajudicial bias can be squarely addressed now, rather than months from now after the expenditure of much additional time and money by all parties—and the Court.

### B. The Bankruptcy Court Should Be Disqualified or, at Minimum, Required to Disclose its Ex Parte Communications and Rule on the Disqualification Motion

The Bankruptcy Court should be disqualified from this matter because it engaged in multiple prohibited *ex parte* communications about Brian Manookian and this proceeding[2] with "at least two [unidentified] lawyers" while this action has been pending.[3] It entered an order reflecting improper bias against Mr. Manookian derived—admittedly—from these *ex parte* communications and other extrajudicial sources.

The Court also failed to promptly notify the parties of its repeated *ex parte* conversations as required by the Code of Conduct for United States Judges.[4] Instead, the Court only disclosed their occurrence much later, and only then to justify the Court's order that depositions in this matter be conducted at a secure courthouse location. In doing so, the Court attributed its order to unarticulated "concerns" about Brian Manookian which were communicated directly to the Court by undisclosed

---

[2] Brian Manookian is the sole member of the Debtor, Cummings Manookian, and the Sole Member of the Defendant, Manookian PLLC.

[3] Transcript of Pretrial Conference and Motion Hearing, March 17, 2022, Pages 84:15-85:11. On April 21, 2022, the Manookian Parties learned that the Trustee, through her Special Counsel, has additionally had at least one improper *ex parte* communication with the Court. Deposition of Phillip Young, Transcript Forthcoming.

[4] Code of Conduct for United States Judges, Canon 3(A)(4).

attorneys in various *ex parte* phone calls, but that neither the Court nor those attorneys disclosed to Appellants at the time.

As a result, Appellants were never able to respond to the *ex parte* representations, or even make a record regarding those improper communications for review by a superior court. To this day, potentially years after the *ex parte* communications in this still-pending case, Appellants thus remain in the dark as to the substance of those prohibited communications, although their clear corrosive effect on the Court has recently become clear.

28 U.S.C. § 455(a) states that "[a]ny . . . judge . . . shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." This recusal standard is objective; the relevant inquiry is whether a "reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality." *Health Servs. Acquisition Corp. v. Liljeberg*, 796 F.2d 796, 800 (5th Cir. 1986) (internal quotation marks omitted), *aff'd*, 486 U.S. 847 (1988); *accord In re Haas*, 292 B.R. 167, 177 (Bankr. S.D. Ohio 2003).

Canon Three of the Code of Conduct for Federal Judges provides that the Court shall not have *ex parte* communications, except in limited circumstances, and even then must give all parties prompt notice of the communications and an opportunity to respond.

> Except as set out below, <u>a judge should not initiate, permit, or consider ex parte communications or consider other communications concerning</u>

<u>a pending or impending matter that are made outside the presence of the parties or their lawyers</u>. If a judge receives an unauthorized ex parte communication bearing on the substance of a matter, <u>the judge should promptly notify the parties of the subject matter of the communication and allow the parties an opportunity to respond, if requested</u>. A judge may:

>(a) initiate, permit, or consider ex parte communications as authorized by law;
>
>(b) when circumstances require it, permit ex parte communication for scheduling, administrative, or emergency purposes, but only if the ex parte communication does not address substantive matters and the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the ex parte communication;
>
>(c) obtain the written advice of a disinterested expert on the law, but only after giving advance notice to the parties of the person to be consulted and the subject matter of the advice and affording the parties reasonable opportunity to object and respond to the notice and to the advice received; or
>
>(d) with the consent of the parties, confer separately with the parties and their counsel in an effort to mediate or settle pending matters.

(Emphasis added.)

The Tennessee Rules of Professional Conduct are likewise clear that attorneys may not engage in *ex parte* communications with the Court. Rule 3.5 states that "A lawyer shall not seek to influence a judge, juror, prospective juror, or other official

by means prohibited by law; communicate ex parte with such a person during the proceeding unless authorized to do so by law or court order."

Finally, Federal law mandates that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Engaging in improper *ex parte* communications in violation of the Federal Code of Conduct for Judges is, definitionally, conduct resulting in a judge's impartiality being reasonably questioned, warranting recusal.

The Court's additional comments about whatever it believes "Mr. Manookian's past behavior" consists of, also require recusal. These comments demonstrate prejudice or bias derived from extrajudicial sources—i.e., sources "other than participation in the proceedings or prior contact with related cases"— warranting recusal. *See Wheeler v. Southland Corp.*, 875 F.2d 1246, 1251 (6th Cir. 1989) (citations omitted).

Both the *ex parte* communications (and subsequent failure to disclose information about them) and the comments reflecting bias derived from extrajudicial sources confirm that the Bankruptcy Court not only violated multiple ethical rules prohibiting *ex parte* communications and independent investigations, but also incorporated and relied upon the information gained in those improper exercises in its rulings in this case.

The Bankruptcy Court's actions in conducting and allowing repeated *ex parte* communications; failing to promptly disclose the occurrence of those communications; failing to ever disclose the dates, substance of, and participants to those conversations; conducting independent investigations into this matter; and relying on both extrajudicial sources in making a ruling reflecting personal bias, all require immediate recusal. They further require full disclosure of the circumstances and substance of the *ex parte* communications and independent investigation.

Finally, the Bankruptcy Court's response to Appellants' request that he simply make the disclosures already required by the Judicial Code of Conduct confirms the need for disqualification. Rather than simply make the disclosure, Judge Walker issued a vitriolic order baselessly accusing Appellants of improprieties. To be clear: Appellants did not create this situation. Judge Walker did. Appellants have no interest in delaying the adjudication of this case and did not seek recusal for reasons of forum-shopping. Indeed, Appellants have sought to put the Trustee to her burden for two-and-a-half years. The Trustee and her counsel—repeat players in bankruptcy court—have delayed adjudication, at one point necessitating a previous, successful appeal in the related bankruptcy action. *See* Memorandum Opinion and Order, *In re Cummings Manookian, PLLC*, No: 3:21-cv-00797 (Dkt. No. 11) (Crenshaw, J.) (App'x at 128).

And when the Appellants learned of his inappropriate communications, they moved in writing for disclosures that Judge Walker should have already made. Appellants did not set the matter for evidentiary hearing; Judge Walker did. And Appellants would not have been required to seek his testimony had Judge Walker simply divulged the details of his *ex parte* communications. Even in seeking his testimony, Appellants made clear in the Notice of Deposition the exceedingly narrow scope of evidence they sought to obtain.

This situation is not the work of the Appellants, regardless of Judge Walker's accusations to the contrary. But the clearly corrosive effect of the *ex parte* communications and extrajudicial investigation—which was by the Bankruptcy Court's own admission the basis for at least one ruling requiring that special conditions be placed upon Mr. Manookian—coupled with the Court's refusal to disclose details of the extrajudicial information, and its caustic subsequent order, makes clear that Judge Walker, under any objective standard, cannot fairly continue to preside over this matter.

This Court should order Judge Walker disqualified, and it should further order that he now make the disclosures mandated by the Code of Judicial Conduct—albeit belatedly. Appellants are entitled to learn the substance of the *ex parte* communications, including to determine which other orders or rulings of the Bankruptcy Court in this proceeding may have been influenced by extrajudicial

communications or information. Such steps are necessary to maintain the integrity of these proceedings.

## VI. <u>CONCLUSION</u>

For the foregoing reasons, Appellant respectfully requests that the Court vacate the Order Quashing Notice of Deposition (Doc. 178) and enter an Order disqualifying the Bankruptcy Court or, at minimum, requiring it to disclose all *ex parte* communications about the case and rule on the Disqualification Motion.

Date: August 4, 2022

Respectfully submitted,

<u>*/s/ John Spragens*</u>
John Spragens (TN Bar No. 31445)
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533
john@spragenslaw.com

*Attorney for Appellants Manookian PLLC and Brian Manookian*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Appellant's Opening Brief was filed August 4, 2022 and served electronically upon the following parties in interest as indicated on the receipt issued by the Court's electronic filing system:

Phillip Young
One Franklin Park
6100 Tower Circle, Suite 200
Franklin, TN 37067
(615) 465-6008 (T)
phillip@thompsonburton.com

*Counsel for Trustee Jeanne Anne Burton*

                                          */s/ John Spragens*